**FILED**

JAN 2 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Philip A. Garland
P.O. Box 33934
Las Vegas, Nevada 89133
(702) 658-5918
Plaintiff
In Pro Se

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILIP A. GARLAND,
7125 REGINA AVE.
LAS VEGAS, NEVADA
Plaintiff,    89133

v.

PENSION BENEFIT GUARANTY CORPORATION,
A wholly owned government corporation,

Defendant.

)
)
)
)
)
)
)
)
)

Case: 1:08-cv-00151
Assigned To : Lamberth, Royce C.
Assign. Date : 1/25/2008
Description: Labor-ERISA

**COMPLAINT**

**COMES NOW**, PHILIP A. GARLAND, PLAINTIFF, (hereinafter PLAINTIFF

GARLAND), In Pro Se, who hereby brings his complaint against the PENSION BENEFIT

GUARANTY CORPORATION, DEFENDANT, (hereinafter PBGC), and alleges, as follows:

**JURISDICTION**

1.      This action arises under Title IV of the Employee Retirement Income Security Act of

1974 (hereinafter, the "Act"), 29 U.S.C. § 1301 et seq.

**PARTIES**

2.      At all times mentioned, PLAINTIFF GARLAND was and is a resident at 7125

Regina Avenue, in the City of Las Vegas, County of Clark, State of Nevada. Jurisdiction is

conferred on this court by reason of Title 26 U.S.C.A. § 401 and all subparagraphs, and Title 29

U.S.C.A. § 411, and all subparagraphs, and Title 29 U.S.C.A. § 1132(e)(1), 29 U.S.C. § 1303(e)(3).

RECEIVED
JAN 14 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

3.     All of the acts complained of in this action occurred within the jurisdiction of the United States District Court for the District of Columbia District of the State of Washington.

4.     DEFENDANT PBGC is a wholly owned government corporation established under Section 4002 of the Act, 29 U.S.C. § 1302, to administer the pension plan termination insurance program created by Title IV of the Act.

5.     PBGC'S principal function is "to provide for the timely and uninterrupted payment of pension benefits to participants and beneficiaries" under plans to which Title IV of the Act applies, Act § 4002(a)(2), 29 U.S.C. § 1305(a)(2), by guaranteeing the payment of certain basic pension benefits after termination of a plan covered under Title IV, Act §§ 4022, 4061, 29 U.S.C. §§ 1322, 1361.

6.     The Appeals Board of the PBGC is authorized by 29 C.F.R. Part 4003 to independently review specific issues raised in appeals that relate to whether PBGC calculated and determined benefits properly under pension plan provisions and applicable law and regulations.

7.     At all times mentioned, US Airways, Inc. Pension Plan was and is a duly organized and existing "qualified trust pension plan" as defined in Title 26 U.S.C.A. § 401, and all subparagraphs, and Title 26 U.S.C.A. § 411, and all subparagraphs.

8.     The pension plan termination insurance program created by Title IV of the Act is not financed from federal tax revenues. When the PBGC pays guaranteed benefits to retirement and disabled employees and their beneficiaries, the money for those benefits comes from the terminated plan's assets and amounts recovered from employers as described below, supplemented by withdrawals from the revolving funds that support all PBGC operations, Act §§ 4005, 4061, 29 U.S.C. §§ 1305, 1361. Those revolving funds are principally comprised of premiums paid by all the private pension plans to which Title IV applies, Act §§ 4005 to 4007, 29 U.S.C. §§ 1305 to 1307. The PBGC is required "to maintain premiums . . . at the lowest level consistent with the discharge of PBGC'S statutory responsibilities, Act § 4002(a)(3), 29 U.S.C. § 1302(a)(3).

9.      The US Airways, Inc. Pilots Retirement Income Plan Pension Plan and US Airways, Inc. Pilots Disability Income Plan and such plan qualified trust was designed and intended to qualify under all of the requirements of Sections 401(a) and 501(a) of the United States Internal Revenue Code, Title 26 (26 U.S.C.A. § 401(a), 26 U.S.C.A. § 501 (a)).

10.      At all times mentioned, PLAINTIFF GARLAND is and was a qualified and vested participant in the US Airways, Inc. Pilots Retirement Income Plan and US Airways, Inc. Pilots Disability Income Plan, and such qualified trust.

11.      The US Airways, Inc. Pilots Retirement Income Plan and US Airways, Inc. Disability Income Plan (hereinafter Plan) terminated on March 31, 2003, at which time each Plan was covered under Title IV of the Act.

12.      On March 31, 2003, the date of Plan termination, the amount of the Plan's insufficiency was in an amount less than 30 percent of the employer's net worth as determined by the PBGC pursuant to Section 4062(d)(1) of the Act, 29 U.S.C. § 1362(d)(1).

13.      As US Airways Inc. have neglected or refused to pay their liability to the PBGC, a lien has arisen in favor of the PBGC upon al property and rights to property, whether real or persona, belonging to US Airways Inc., Act § 4068(a), 29 U.S.C. § 1368(a). Pursuant to Section 4068(b) of the Act, that lien arose as of March 31, 2003, the date of Plan termination. PBGC adopted the US Airways, Inc. Pilots Retirement Income Plan and US Airways, Inc. Pilots Disability Income Plan, termination date of March 31, 2003.

14.      PLAINTIFF GARLAND became an employee of US Airways, Inc. on November 13, 1982.

15.      Since December 12, 1984, PLAINTIFF GARLAND has been subjected to a continuing pattern and practice of racial discrimination and retaliation. See Philip A. Garland v. US Air, Inc., 767 Fed. Supp. 715 (W.D.Pa 1991).

16.     On or about July 24, 2001, US Airways, Inc. terminated the employment of PLAINTIFF GARLAND.

17.     During that time, PLAINTIFF GARLAND become emotionally and physically unable to cope with the stresses and tensions associated with racial discrimination and retaliation upon medical advice PLAINTIFF GARLAND could no longer effectively serve as an airline captain of the corporation.

18.     Upon application by the PLAINTIFF GARLAND, and in order to induce PLAINTIFF GARLAND'S voluntary resignation US Airways and the Airline Pilot's Association Intl. (hereinafter ALPA), declared and authorized payment in the form of severance pay. PLAINTIFF GARLAND'S request to qualify for disability retirement benefits under the plan on account of the stresses and tensions suffered by PLAINTIFF GARLAND over the course of the previous years as a black airline captain of US Airways, which symptoms were well known to the board of directors as the time of the termination of PLAINTIFF GARLAND'S employment and termination of the US Airways Plan.

19.     PLAINTIFF GARLAND has not received any monthly disability retirement payments following receipt of the determination letter.

20.     On information and belief, PLAINTIFF GARLAND alleges that PLAINTIFF GARLAND remains totally and permanently disabled and is entitled to disability retirement income under the plan.

21.     The course of action by defendants PBGC in denying the disability retirement income to PLAINTIFF GARLAND was wrongful and undertaken in bad faith and contrary to law.

22.     The actions undertaken by defendants PBGC, wrongfully denying PLAINTIFF GARLAND'S disability retirement income under the plan in the manner and for the reasons set forth above were willfully and fraudulently undertaken by defendants PBGC, and were intended to cause, and have caused damage to PLAINTIFF GARLAND.

4

23.    At all times up to and including the date of termination of employment, PLAINTIFF GARLAND was a qualified participant in the pension plan and qualified trust of US Airways Inc.

24.    All of the benefits due PLAINTIFF GARLAND in accordance with the US Airways, Inc. Pilots Retirement Income Plan and US Airways, Inc. Pilots Disability Income Plan were and are vested and nonforfeitable, and PLAINTIFF GARLAND has duly complied with all the conditions in order to receive such retirement benefits.

25.    On or about July 24, 2001, and March 31, 2003, and May 1, 2004, PLAINTIFF GARLAND timely requested payment of all benefits accrued in accordance with the above-mentioned pension plan.

26.    On or about March 31, 2003, PLAINTIFF GARLAND was notified by the PBGC that all rights and benefits due PLAINTIFF GARLAND under the above-mentioned pension plan had been substantially reduced.

27.    On or about September 27, 2006, PLAINTIFF GARLAND filed a timely request for a review of the decision by PBGC denying PLAINTIFF GARLAND benefits in accordance with the pension plan.

28.    On or about December 13, 2007, PLAINTIFF GARLAND received a decision from the PBGC denying PLAINTIFF GARLAND pension rights and benefits due PLAINTIFF GARLAND in accordance with the above-mentioned pension plan. A copy of the decision is attached, hereto, marked EXHIBIT #1, and incorporated by this reference.

29.    The above-mentioned PBGC decision denying PLAINTIFF GARLAND the rights and benefits due PLAINTIFF GARLAND under the above-mentioned pension plan as arbitrary, illegal, capricious, unreasonable, discriminatory, and not made in good faith and violates Title 26 U.S.C.A. § 401 and all subparagraphs, Title 26 U.S.C.A. § 411 and all subparagraphs, Title 26 U.S.C.A. § 401(a) and all subparagraphs, and Title 26 U.S.C.A. § 501(a) and all subparagraphs. The

decision is not supported by substantial evidence and rises from an erroneous application of federal law.

30.     As a direct and proximate result of such PBGC actions, PLAINTIFF GARLAND has been caused to incur legal fees and costs in an amount not now known to PLAINTIFF GARLAND. PLAINTIFF GARLAND has sustained damages in an amount not now known to PLAINTIFF GARLAND but on information and belief, such damages will approximate the amount of benefits due PLAINTIFF GARLAND in accordance with the pension and retirement plan for each month since May 1, 2004 (the first day of the month after age 50); and PLAINTIFF GARLAND will continue to sustain similar damages each month until the benefits are paid.

**WHEREFORE**, PLAINTIFF PHILIP A. GARLAND requests judgment against PENSION BENEFIT GUARANTY CORPORATION, as follows:

a.     Assign this case for hearing at the earliest practical date and cause this case to be in every way expedited;

b.     A Court Order directing the DEFENDANT PENSION BENEFIT GUARANTY CORPORATION to pay to PLAINTIFF PHILIP A. GARLAND all benefits due PLAINTIFF PHILIP A. GARLAND under the US Airways, Inc. Pilots Retirement Income Plan and US Airways, Inc. Disability Income Plan retroactive to July 24, 2001 PLAINTIFF PHILIP A. GARLAND.

**DATED this** 12 **day of JANUARY, 2008.**

Philip A. Garland
P.O. Box 33934
Las Vegas, Nevada 89133
(702) 658-5918
Plaintiff
In Pro Se

# EXHIBIT # 1

**PBGC**
Protecting America's Pensions

**Pension Benefit Guaranty Corporation**
1200 K Street, N.W., Washington, D.C. 20005-4026

December 13, 2007

Mr. Philip Garland
Post Office Box 33934
Las Vegas, NV  89133

       Re: Appeal 2007-0141, Case No: 199334, Retirement Plan for Pilots
       of US Airways, Inc. (the "Pilots Plan")

Dear Mr. Garland:

    We are responding to your appeal of PBGC's September 27, 2006 benefit
determination (later amended by $0.53 in your favor on February 6, 2007) regarding
your monthly pension benefit from the Plan.  For the reasons stated below, we must
deny your appeal.

### PBGC's Benefit Determination and Your Appeal

    According to our records, you retired on May 1, 2004, about 13 months after
PBGC took over as trustee of the terminated Pilots Plan and which was immediately
after you attained the Pilots Plan age of early retirement (age 50).  Upon your
retirement, PBGC paid you an <u>estimated</u> benefit of $1,282.67 in the form of a
Straight Life Annuity ("SLA") with no survivor benefits.

    PBGC issued your initial (formal) benefit determination on September 27,
2006 and stated that you were entitled to a monthly benefit of $1,292.74 in the form
of a SLA with no survivor benefits.  This formal determination was $10.07 a month
greater than your estimated benefit, and PBGC paid you a lump sum of $343.93,
which included interest, on December 1, 2006 to account for the underpayments
since May 1, 2004.  Unrelated to your appeal, PBGC adjusted your benefit in your
favor by $0.53 on February 6, 2007.  You are now receiving a monthly benefit of
$1,293.27 (with no tax withholding).  Enclosure #1 is a copy of your PBGC benefit
statement, dated October 23, 2006, reflecting your current benefit of $1,293.27.

    On November 11, 2006, you made a timely request for an extension of time
to file your appeal.  That extension request was in the process of being approved
when the Appeals Board received your appeal, styled as "Philip Anthony Garland
vs. Pension Benefit Guaranty Corporation," on December 6, 2006 (PBGC date
stamp).  Given your timely filed extension request, the Appeals Board considered
your appeal timely filed under our regulation.

**08 0151**
**FILED**

JAN 2 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

On page 4 of your appeal, under "Statement of Issues," you raise the following four questions:

- Did the PBGC wrongfully take and receive PLAINTIFF GARLAND'S retirement account from US AIRWAYS DEFENDANTS?
- Did the PBGC upon wrongfully taking and receiving PLAINTIFF'S GARLAND'S retirement account commit another wrong by reducing his benefit on account of his age?
- Did the PBGC wrongfully submit a benefit determination that should be recalculated without the age reduction?
- Does PLAINTIFF GARLAND have some other remedy to this action committed by PBGC and US AIRWAYS DEFENDANTS?

On the last page of your appeal, under "Conclusion," your appeal states that: "PBGC DEFENDANTS have conspired to obtain or have otherwise wrongfully obtained [your] retirement benefits. After having obtained such retirement benefits, PBGC DEFENDANTS wrongfully reduce[d] [your] benefit determination solely because of [your] age violating [your] civil and equal rights."

Discussion

PBGC is the United States government agency that administers the federal insurance program for defined benefit pension plans.  When an under-funded pension plan terminates, PBGC becomes its trustee and pays guaranteed benefits to the participants according to the plan's terms.

The Appeals Board of the PBGC is authorized by 29 C.F.R. Part 4003 to independently review specific issues raised in appeals that relate to whether PBGC calculated and determined benefits properly under pension plan provisions and applicable law and regulations.  We have carefully considered the entire contents of your appeal, the arguments therein, and the issues and conclusions you raised.  We will explain in detail our findings below.

We must, first, note that the Appeals Board has no authority to review or determine whether US Airways Plan should have terminated you from their employment on April 25, 2001 [the date you list] and whether this action violated federal law, as you contend in the first paragraph of your "Statement of Facts."  Based on the content of your appeal, you apparently have or are continuing "to challenge this termination" in another forum.  Should there be a settlement or court finding that changes your date of termination from US Airways, PBGC will always accept such evidence and recalculate your benefit.

Second, the Appeals Board cannot change the Pilots Plan's termination date. We note that, on March 28, 2003, PBGC and US Airways (as Plan Adminstrator) entered into an agreement that formally terminated the Pilots Plan and established March 31, 2003, as the termination date.  See 29 United States Code ("U.S.C.") section 1348 (which authorizes PBGC and the Plan Administrator to establish termination date by agreement).

2

Your appeal at page 8 states that: "Clearly, PBGC DEFENDANTS, US AIRWAYS DEFENDANTS, and ALPA DEFENDANTS (Airline Pilots Assn. Intl.) have violated PLAINTIFF GARLAND'S civil rights and should be required to turn over the original funds in his [the Pilot's Plan] account" as of your termination dated of employment. You further claim on page 8 of your appeal that PBGC's actions are part of a conspiracy to deny you "equal protection or equal privileges and immunities." The fundamental premise underlying your argument is that you have specific dollars in the Pilots Plan with your name on them.   Such a premise, in regards to defined benefit pension plans, is in error.

Judge Stephen S. Mitchell, a United States Bankruptcy Judge for the Eastern District of Virginia, rejected a similar claim by a US Airway pilot in the US Airways bankruptcy case. Judge Mitchell stated on pages 6-7 of his decision:

"The Retirement Plan for Pilots of US Airways, Inc. is a defined benefit plan under 29 U.S.C. § 1002(35). A defined benefit plan is a plan that "promises to pay employees, upon retirement, a fixed benefit under a formula that takes into account factors such as final salary and years of service with the employer." [PBGC v LTV Corp..] 496 U.S. [633] at 637, 110 S.Ct. at 2671. Under such a plan, an employee is entitled to a fixed annuity upon retirement for the remainder of the retiree's life. This type of plan does not, however, give an employee ownership over a discrete portion of the plan's assets. An employee is only entitled to the fixed benefit under the plan upon retirement."

We are providing a copy of the entire opinion at Enclosure #2.

Because we cannot under law and regulation grant relief on your claims that you were wrongfully terminated (fired) from your job in 2001 and that you are entitled to the "original funds in [your] account" as of your termination date, we will now focus on your claim that PBGC unlawfully reduced your benefit because of your age. We will also explain in detail how your benefit was calculated.

We note that you have not appealed the following underlying facts that directly impact your PBGC benefit: (1) your date of birth of April 5, 1954; (2) your date of hire of November 13, 1982; (3) your date of termination of employment of July 24, 2001; (4) your normal retirement would be May 1, 2014 (age 60); or (5) your accrued Pilots Plan monthly benefit (as of the termination date) at your actual retirement date (age 50) of $3,310.69.

## ERISA's Maximum Guaranteed Benefit Limitation

Because of legal limits under the Employee Retirement Income Security Act of 1974 ("ERISA") and PBGC's regulations, the benefits that PBGC guarantees may be less than the benefits a pension plan would otherwise pay.

Below we will discuss how one of these limits, known as the "maximum guaranteed benefit" ("MGB," which also is referred to as the "maximum insurance limit"), affects the amount of your PBGC benefits. We will then explain how PBGC also pays benefits based on: (1) an allocation of a plan's assets as of the plan termination date (ERISA § 4044); and (2) an allocation of PBGC's recoveries on certain legal claims (ERISA § 4022(c) benefits).

The MGB establishes the maximum monthly amount of benefits that PBGC guarantees. The MGB amount depends upon the year in which the pension plan terminates. Since the Pilots Plan terminated effective March 31, 2003, the limit is $3,664.77 per month for a participant who begins receiving PBGC benefits at age 65 in the form of a SLA.

ERISA expressly defines the MGB based on "the actuarial value of a monthly benefit in the form of a straight-life annuity commencing at age 65 . . . " See 29 U.S.C. section 1322(b)(3). Because of this language, the MGB is less for participants who begin receiving their benefit payments at ages younger than 65 years because the cost of providing a benefit for their expected life is larger.

Congress, however, created a single exception to the MGB. This exception is limited to participants whose benefits are payable because of a disability that occurred on or before the pension plan's date of plan termination ("DOPT"). Because ERISA does not include a statutory exception for pilots (or for that matter any other occupational group), PBGC must reduce the age-65 MGB amount for pilots who begin receiving their PBGC benefits before age 65. PBGC is required to follow the law as enacted by Congress and, thus must actuarially reduce the MGB for pilots, or anyone else, who retires before age 65.

Congress expressly delegated to PBGC the authority to determine the actuarial values of benefits for purposes of the MGB. See 29 U.S.C. section 1322(b)(4). Based on this express delegation, PBGC issued a regulation that establishes the MGB age reduction factors for benefits that start before age 65. See 29 Code of Federal Regulations section 4022.23(c). This regulation states: "For each of the 60 months immediately preceding the 65th birthday, the reduction shall by 7/12 of 1%. For each of the 60 months immediately preceding the 60th birthday, the reduction shall be 4/12 of 1%. For each of the 120 months preceding the 55th birthday, the reduction shall be 2/12 of 1%." Thus, for participants who begin receiving their PBGC benefits at age 50, the reduction is 65%.

PBGC and Plan records show your date of birth as April 5, 1954. The governing documents of the Pilots Plan provide that your normal retirement date is May 1, 2014 (first day of the month after age 60) and that your earliest retirement date is May 1, 2004 (the first day of the month after age 50). We note that regardless of whether you were terminated by US Airways in 2001 or worked through your earliest retirement date, you would not have been able to retire any earlier than May 1, 2004.

Based on the Maximum Guaranteed Benefit age reduction factors discussed above, your MGB from PBGC is calculated as follows:

(1) MGB at age 65 = $3664.77.

(2) MGB at age 50 = $3,664.77 x Age Reduction Factor for early retirement
= $3664.77 x 1 − [(7/12 of 1% x 60 months) + (4/12 of 1% x 60 months) + (2/12 of 1% x 59 full months)]
= $3664.77 x 1 − [(.35) + (.20) + (.0983)]
= $3,664.77 x 1 − [.6483]
= $3,664.77 x .3517
= $1,288.90  (see line #2 of your benefit statement)

Because your Pilots Plan monthly benefit at your actual retirement date (May 1, 2004) was $3,310.60 in the form of a SLA (see line #1 of your benefit statement) and thus exceeded the MGB at that age, PBGC can only guarantee the MGB amount of $1,288.90, as calculated immediately above.

## ERISA Section 4044 (Allocation of Plan Assets)

You have complained in your appeal about unlawful reductions to your PBGC benefit on account of your age. While it is true that, in many instances, pilots below age 53 on the date of plan termination will receive lower benefits from PBGC than older pilots with similar earnings and service, this is the direct result of the requirements in ERISA section 4044 concerning the allocation of a pension plan assets. See discussion below. PBGC and the Appeals Board must follow the terms of ERISA and applicable regulations, and therefore, we cannot increase benefits for younger pilots, such as you.

ERISA section 4044 requires PBGC to allocate a pension plan's assets, valued as of its termination date ("DOPT"), according to their priority. Enclosure #3 is the standard PBGC information sheet that describes the categories in the order of their priority. PBGC conducted an actuarial valuation of the Pilots Plan and determined that as of its DOPT: (1) the value of its assets was $1,193 million; (2) it had no Priority Category 1 benefits, and assets did not need to be allocated to Priority Category 2; (3) the value of Priority Category 3 ("PC3") benefits was $1,153 million; and (4) the Pilots Plan's assets were exhausted in Priority Category 4 ("PC4") – the category covering PBGC-guaranteed benefits – since there was only $39 million in assets to cover $590 million in PC4 benefits.

As discussed above, PBGC first allocated the Plan asset amount ($1,193 million) to the value of participants' PC3 benefits ($1,153 million); thus, 100% of the Pilots Plan's PC3 benefits were covered by its assets. As is shown on Enclosure #3, PC3 covers certain benefits that were in pay status, or could have gone into pay status, on the day before the beginning of the three-year period ending on DOPT (March 31, 2003). The Pilots Plan provided for early retirement at age 50. Therefore, you and other pilots who were under age 53 on March 31, 2003 do not have any benefits in PC3, since you and they were not eligible to retire three years prior to that date.

Although the Pilots Plan's assets were exhausted in PC4, PBGC is paying 100% of your PC4 benefits as guaranteed benefits. Your vested non-guaranteed benefits (i.e., your Plan benefit amounts above PBGC's MGB) are in PC5. Since plan assets did not fund all PC4 benefits, no plan assets remained to fund Priority Category 5 ("PC5") benefits. Accordingly, you do not benefit from the ERISA section 4044 allocation due to the insufficiency of the Pilots Plan's assets. While we are sympathetic to your situation, PBGC and the Appeals Board must follow the terms of ERISA and applicable regulations.

### ERISA Section 4022(c) (PBGC's Recoveries)

Section 4022(c) of ERISA authorizes PBGC to pay additional benefits based on the monies that PBGC recovers from employers that maintained under-funded pension plans. As is discussed in Enclosure #3, PBGC allocates additional money (the "section 4022(c) amount") to pay otherwise unfunded benefits in excess of guaranteed benefits. For plans like yours, in which the outstanding amount of unfunded non-guaranteed benefit liabilities exceeds $20 million, the section 4022(c) amount is based on PBGC's actual recovery on its claims against the plan sponsor. In this case, PBGC: (1) calculated the recovery under 4022(c) as $2,707,811; and (2) as required by ERISA sections 4044 and 4022(c), allocated this entire section 4022(c) amount to benefits in PC5 under 5-year old plan provisions - which PBGC had valued as $1,411,621,196. Thus, PBGC determined that the Plan's section 4022(c) amount covered only 0.19% of benefits in PC5 under 5-year old plan provisions [$2,707,811 ÷ $1,411,621,196 = 0.19%]. PBGC calculated your monthly section 4022(c) benefit amount as $4.37 per month as a SLA at your actual retirement date, using this percentage.

Thus, your PBGC monthly benefit as a SLA starting on May 1, 2004 is $1,293. 27, which is the sum of: (1) your MGB amount of $1,288.90 plus (2) your ERISA section 4022(c) amount of $4.37.

<u>Decision</u>

Because you have not presented any grounds that could change PBGC's determination (*see* 29 Code of Federal Regulations §4003.54), we must deny your appeal. This is the Agency's final decision, and you may, if you wish, seek court review.  If you need other information from PBGC, please contact the Customer Contact Center at 1-800-400-7242 and ask to speak to the Authorized Representative for the Plan.

Sincerely,

*Charles Vernon*

Charles Vernon
Chair, Appeals Board

Enclosures (3)
    1) Your PBGC Benefit Statement dated 10/23/2006
    2) Memorandum Opinion, United States Bankruptcy Court, Eastern District of
        Virginia, August 11, 2006
    3) Description of ERISA's Priority Categories



PBGC
U.S. GOVERNMENT AGENCY

Privacy Act Data

# Benefit Statement

10/23/2006 05:57 PM
Page 1 of 2

PHILIP GARLAND

## RETIREMENT INCOME PLAN FOR PILOTS OF US AIRWAYS

PBGC Case Number:                 19933400
Date of Plan Termination:         March 31, 2003

Participant's Name:             **PHILIP GARLAND**

**Participant's Information**

-----------------------------

| | |
|---|---|
| Social Security Number: | XXX-XX-3711 |
| Gender: | Male |
| Date of Birth: | 04/05/1954 |
| Date of Hire: | 11/13/1982 |
| Date of Termination of Employment: | 07/24/2001 |
| Participant Number: | G66721 |
| Merger Category: | US Air |
| Normal Retirement Date: | 05/01/2014 |

**Summary of Participant's Benefit**

-------------------------------------

| | |
|---|---|
| Actual Retirement Date (ARD): | 05/01/2004 |
| Current Monthly Benefit: | $1,282.67 |
| PBGC Monthly Benefit at Actual Retirement Date: | $1,293.27 |
| Form of Annuity: | Straight Life |

Your current monthly benefit of $1,282.67 will increase to $1,293.27 due to an Incorrect Original Maximum Insurance Limit. See benefit calculation for details.

**Benefit Calculation**

-------------------------

(1)      Plan Monthly Benefit at ARD as a Straight Life
         Annuity:                                      $3,310.69

*Pg 2 of 2*

Privacy Act Data

**PHILIP GARLAND**

The benefits PBGC guarantees are limited by federal pension law to the PBGC's maximum monthly amount that was in effect on the date of plan termination. This limit is adjusted to reflect your age and form of annuity.

(2)    Maximum Insurance Limit at ARD as a Straight Life
      Annuity:

                                                                                $1,288.90

(3)    Guaranteed Monthly Benefit at ARD as a Straight Life Annuity:
      lesser of (1) or (2) =
      lesser of $3,310.69 or $1,288.90 =

                                                                          $1,288.90

(4)    Additional Monthly Benefit due to 4022(c) at ARD as a Straight Life
      Annuity:

                                                                             $4.37

(5)    PBGC Monthly Benefit at ARD as a Straight Life Annuity:
      (3) + (4) =
      $1,288.90 + $4.37 =

                                                                        $1,293.27

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
US AIRWAYS, INC., *et al.*                )     Case No. 04-13819-SSM
                                          )     Chapter 11 (Jointly Administered)
                         Debtors          )
                                          )

MEMORANDUM OPINION
ON OBJECTION TO ADMINISTRATIVE CLAIM
OF THOMAS TIFFANY

A hearing was held in open court on July 20, 2006, on the objection of the

reorganized debtors to the administrative claim filed by Thomas Tiffany in the amount of

$600,000. Mr. Tiffany, who participated in the hearing by telephone, is employed by the

debtor as an airline pilot. In a prior chapter 11 case filed by the debtor, the defined benefit

retirement plan for pilots of US Airways was terminated, and the assets of the plan were

turned over to the Pension Benefit Guaranty Corporation ("PBGC"), a government agency

created by Congress to insure the payment of pension benefits to retirees. Mr. Tiffany's

administrative claim in this case is for what he calculates as the difference between the

benefit that the PBGC will pay him once he retires and what he would have received under

the terminated plan. For the reasons stated, the claim must be disallowed.

<u>Background</u>

US Airways, together with its parent holding company and several affiliates, filed a

petition for reorganization under chapter 11 of the Bankruptcy Code in this court on

September 12, 2004. This was the company's second chapter 11 filing. It had previously

1

filed a chapter 11 petition in this court on August 11, 2002. During the first case, the debtor

brought a motion to approve a distress termination of the pension plan for pilots of US

Airways, Inc. That motion was approved — subject to a determination that termination

would not violate the terms of the collective bargaining agreement — by an order entered

March 2, 2003. *In re US Airways Group, Inc.*, 296 B.R. 734 (Bankr. E.D. Va. 2003). An

appeal was taken from the order by a group of retired pilots but was dismissed on equitable

mootness grounds. *Retired Pilots Ass'n of US Airways, Inc. v. US Airways Group, Inc.*, 369

F.3d 806 (4th Cir. 2004). A plan was confirmed in the first case on March 18, 2003, under

which allowed unsecured claims (except for a convenience class of small claims) would not

be paid in cash but would instead receive stock in the reorganized company. The assets of

the retirement plan were turned over to the PBGC, which filed a proof of claim for the full

amount of what it calculated to be the underfunding of the plan — that is, the difference

between the value of the plan assets turned over to it and the present value of the future

payments owed to the beneficiaries of the plan.[1] Following an evidentiary hearing, this court

allowed the claim in full. *In re US Airways Group, Inc.*, 303 B.R. 784 (Bankr. E.D. Va.

2003). No appeal was taken from that ruling, and the PBGC received a distribution of stock

in the reorganized company in satisfaction of its claim.

As noted, the present chapter 11 case was filed on September 12, 2004. Mr. Tiffany

filed a secured claim (Claim No. 1444) in the amount of $600,000 on December 7, 2004,

---

[1] It is important to note that the PBGC's claim is not restricted to the amount needed to pay
the guaranteed benefit but is for the full amount needed to pay the contractual benefit owed
to plan participants. Although payment of benefits by the PBGC is guaranteed only up to a
certain amount, the PBGC will pay benefits beyond the guaranteed amount to the extent plan
assets permit.

2.

That claim was disallowed on August 24, 2005. Order Sustaining Debtors' Second

Omnibus Objection to Certain Claims, Ex. C at 13 (Doc. # 2912). In the interim, Mr.

Tiffany had filed an administrative claim (Claim No. 5264) on July 22, 2005. The

administrative claim is for the same amount, and is based on the same grounds, as the earlier

claim. On May 10, 2006, the reorganized debtors objected to Mr. Tiffany's administrative

claim as part of its Second Omnibus Objection to Certain Administrative Claims (Doc. #

3955) at 8-9 & Ex. D. The reorganized debtors contend that Mr. Tiffany's claim should be

disallowed because it does not constitute an administrative expense and because "there is no

legal basis for the Reorganized Debtors' liability on account of such claims."

<u>Discussion</u>

Mr. Tiffany's claim must be disallowed for two reasons. First, the claim does not

qualify as an administrative expense claim. Second, the fundamental premise on which the

claim is based is incorrect.

A.

As the reorganized debtors correctly observe, Mr. Tiffany's claim is not an

administrative expense as defined by Section 503(b) of the Bankruptcy Code. In a

bankruptcy case, a court may allow, as an expense of administration, "the actual, necessary

costs and expenses of preserving the estate, including wages, salaries, or commissions for

services rendered after the commencement of the case." § 503(b)(1)(A), Bankruptcy Code.

Administrative expenses are accorded priority in distribution, and are paid ahead of claims

having a lesser priority (including general unsecured claims). §§ 507(a)(1) and 726(a)(1).

3

Bankruptcy Code.[2]  A request for payment of an administrative expense will qualify if (a)

the right to payment arose from a post-petition transaction with the debtor's estate; and (b)

the consideration supporting the right to payment was beneficial to the estate of the debtor.

*See In re Hemingway Transp., Inc.,* 954 F.2d 1, 5 (1st Cir. 1992).  A claim arises, for

administrative expense purposes, when the acts giving rise to the liability occur, even if the

payment does not becomes due, or damages are not experienced, until some future time.  *See*

*In re The Bentley Funding Group, LLC,* No. 00-13386, 2001 WL 3405425 (Bankr. E.D. Va.,

Jan. 2, 2001) (where indemnity agreement between bonding company and debtor land

developer was entered into prior to the bankruptcy, the bonding company's claim for post-

petition costs of completing subdivision improvements was not an administrative expense

claim); *In re Dornier Aviation (North America), Inc.,* Nos. 02-82003 and 02-82004, 2002 WL

31999222 (Bankr. E.D. Va., Dec. 18, 2002) (severance pay owned under a prepetition

employment agreement was not an administrative claim even though the employee worked

for 86 days after the bankruptcy petition was filed).[3]

Mr. Tiffany asserts the basis for his claim to be unpaid compensation for services

performed from the beginning of his employment with the debtor on March 2, 1987, to the

present.  The specific events giving rise to his claim, however, are the distress termination of

---

[2]  For cases filed on or after October 17, 2005, administrative expenses claims are now
subordinate to claims for "domestic support obligations," such as child support and alimony,
but remain senior to all other unsecured claims.  Bankruptcy Abuse Prevention and
Consumer Protection Act of 2005, Pub.L. 109-8.

[3]  The *Bentley Funding* and *Dornier Aviation* opinions are available on the court's Internet
web site at http://www.vaeb.uscourts.gov/opinions/ssm/bentley_axa%20admin%20claim.pdf
and http://www.vaeb.uscourts.gov/opinions/ssm/fairchild_neely.pdf.

4

the pilots pension plan and the turnover of the plan assets to the PBGC, both of which

occurred during the first chapter 11 case, and long before the filing of the present case.

While Mr. Tiffany will not experience any actual loss of income from the termination of the

plan until the time he actually retires, his claim for the reduction in retirement

benefits—even if it were allowable as a claim against the debtors—is nevertheless a

prepetition claim and not an administrative expense claim.[4]

### B.

But even if Mr. Tiffany's claim could be construed as arising from a post-petition

transaction with the debtor, it would have to be disallowed because it duplicates the allowed

claim of the PBGC in the prior chapter 11 case and because it proceeds from the incorrect

premise that the funds in the plan belonged to him and the other pilots and should not have been

turned over to the PBGC.

Title IV of the Employee Retirement Income Security Act of 1974 (ERISA) created a

mandatory government insurance program that is administered by the PBGC. The insurance

program was created to protect "private-sector workers participating in covered pension plans

against the termination of their plans before sufficient funds have been accumulated to pay

anticipated benefits." *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 637, 110 S.

Ct. 2668, 2671, 110 L.Ed.2d 579 (1990).  Under Title IV of ERISA, when a defined benefit

---

[4] Indeed, since the events giving rise to the claim occurred prior to confirmation of the plan
in the first chapter 11 case, and since confirmation of a chapter 11 plan discharges a debtor
that continues to engage in business from all pre-confirmation claims, § 1141(d),
Bankruptcy Code, the claim now being asserted was allowable, if at all, only in the first
chapter 11 case.

5

002449

pension plan terminates with insufficient assets, the PBGC becomes trustee of the plan and takes over the plan's assets and liabilities. See 29 U.S.C. §1344.

Upon assumption of the plan's assets and liabilities, the employer becomes liable to the PBGC for the "total amount of the unfunded benefit liabilities under the plan (as of the termination date) ..." 29 U.S.C. 1362 (b)(1)(B)(a). The PBGC filed a timely claim in the first chapter 11 case for the unfunded liabilities under the plan, and that claim was allowed in full by this court in December 2003. Any claim by individual plan participants would be therefore duplicative of the PBGC's claim.

To this, Mr. Tiffany rejoins that the debtor had no right to turn over the funds, and the PBGC had no proper claim to them, because the money in the plan belonged its beneficiaries. As noted earlier, however, Congress, through Title IV of ERISA, put forth a comprehensive statutory scheme that governs the transfer of a terminated defined benefit plan's assets from an employer to the PBGC. Because ERISA is controlling, Mr. Tiffany's argument that the plan assets should have been turned over to him and the other plan participants in unavailing.

Additionally, the fundamental premise of Mr. Tiffany's argument—that there are specific dollars in the plan that have his name on them—is incorrect. The Retirement Plan for Pilots of US Airways, Inc., is a defined benefit plan under 29 U.S.C. § 1002(35). A defined benefit plan is a plan that "promises to pay employees, upon retirement a fixed benefit under a formula that takes into account factors such as final salary and years of service with the employer." *LTV*, 496 U.S. at 637, 110 S.Ct. at 2671. Under such a plan, an employee is entitled to a fixed annuity

6

002449    32405002454047

upon retirement for the remainder of the retiree's life.[5] This type of plan does not, however, give an employee ownership over a discrete portion of the plan's assets. An employee is only entitled to the fixed benefit under the plan upon retirement.

ERISA distinguishes a defined benefit plan from a defined contribution plan. See 29 U.S.C. § 1002(34). A defined contribution plan is one under which an employer "typically contributes a percentage of an employee's compensation to an account, and the employee is entitled to the account after retirement." *Pension Benefit Guaranty Corp.*, 496 U.S. at 637, 110 S.Ct. at 2671. An example of a defined contribution plan is a 401(k) plan, in which an employee, and not the employer, holds title to and exercises control over the account. ERISA does not insure these types of plans because "employees are not promised any particular level of benefits; instead, they are promised only that they will receive the balances in their individual accounts." *Id.* If the U.S. Airways Pilot's Retirement Plan were a defined contribution plan under 29 U.S.C. § 1002(34), then Mr. Tiffany would be correct in assuming that he is entitled to a fixed portion of the plan's assets. This, however, is not the case. Mr. Tiffany is only entitled to the contractual benefits under the plan, as modified by ERISA upon the plan termination. To allow Mr. Tiffany to assert a claim against the employer to recover the difference between what he would have received under the plan had it not been terminated and what he will receive from



---

[5] The retirement plan for pilots of US Airways did include an option for a pilot, on retirement, to receive a lump sum payment rather than an annuity. The details of how the lump sum was computed are not part of the record before the court, but presumably it represented the commuted value of the annuity. In any event, the fact that a particular defined-benefit plan has a lump sum payment option does not affect the underlying analysis of whether plan participants own the funds in the plan or merely have a contractual right to payment.

7

# Description of ERISA's Priority Categories

## INFORMATION SHEET FOR 4022(c) BENEFITS

Section 4022(c) of ERISA authorizes PBGC to pay additional benefits based on the monies recovered from employers that maintained underfunded pension plans. A portion of this additional money is allocated to Unfunded Nonguaranteed Benefits -- benefits that PBGC does not normally pay.

The amount of the recoveries payable with respect to a particular plan is allocated to Unfunded Nonguaranteed Benefits, according to categories listed in ERISA Section 4044. In order of priority, the categories are as follows:

CATEGORY 1: Benefits derived from voluntary employee contributions.

CATEGORY 2: Benefits derived from mandatory employee contributions.

CATEGORY 3: Certain benefits that were in pay status, or could have gone into pay status, on the day before the beginning of the three-year period ending on the Date of Plan Termination. Benefits under this category are based on the smallest benefit available in the 5 year period immediately preceding the Date of Plan Termination.

CATEGORY 4: All other benefits guaranteed by PBGC and the benefits that are not guaranteed because of limitations under Title IV of ERISA on payments to substantial owners.

CATEGORY 5: All other nonguaranteed vested benefits under the plan. Allocation of recoveries in this category is made first to benefits under the oldest plan provisions and then to benefits contained in later amendments, in the order the amendments became effective. The oldest plan provisions considered in this category are the ones in effect during the entire 5 year period immediately preceding Date of Plan Termination.

CATEGORY 6: Non-vested benefits under the plan. Money is first allocated to the category of Unfunded Nonguaranteed Benefits with the highest priority (that is, the lowest number), then to that with the second highest, and so on until the entire amount has been expended. If the amount to cover a particular category is insufficient, the amount earmarked for that category will generally be distributed proportionally among those eligible in that category.

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

## I (a) PLAINTIFFS

*Philip Garland*

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _88888_
**(EXCEPT IN U.S. PLAINTIFF CASES)**

PRO SE (NP)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

*Pension Benefit Guaranty Corp.*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:08-cv-00151
Assigned To : Lamberth, Royce C.
Assign. Date : 1/25/2008
Description: Labor-ERISA

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ Federal Question (U.S. Government Not a Party)
☒ U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENS
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)** OR ☐ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

| □ **G.** *Habeas Corpus/ 2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| □ **K.** *Labor/ERISA (non-employment)*<br><br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ **L.** *Other Civil Rights (non-employment)*<br><br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ **M.** *Contract*<br><br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ **N.** *Three-Judge Court*<br><br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

□ 1 Original Proceeding    □ 2 Removed from State Court    □ 3 Remanded from Appellate Court    □ 4 Reinstated or Reopened    □ 5 Transferred from another district (specify)    □ Multi district Litigation    □ 7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 USC 1132

---

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS    □ ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint
**JURY DEMAND:** □ YES    ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    □ YES    ☒ NO    If yes, please complete related case form.

**DATE** 1/25/08    **SIGNATURE OF ATTORNEY OF RECORD** NC O

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd