**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

PHILIP A. GARLAND,                                  )
                                                    )
            Plaintiff,                              )
                                                    )
      v.                                            )          No. 1:08-cv-00151-RCL
                                                    )
PENSION BENEFIT GUARANTY                            )
CORPORATION,                                        )
                                                    )
            Defendant.                              )
_____)

**MOTION TO DISMISS AMENDED COMPLAINT, STRIKE JURY**
**DEMAND AND MEMORANDUM IN SUPPORT THEREOF**

Defendant Pension Benefit Guaranty Corporation ("PBGC") hereby submits this

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") and strike the

jury demand in the amended complaint filed by *pro se in forma pauperis* Plaintiff Philip

A. Garland ("Plaintiff").[1]  As explained more fully below, Plaintiff has failed to: (1)

allege more than just the legal conclusion that PBGC wrongfully denied him his pension

plan benefits, thereby failing to raise his right to relief above the speculative level and to

satisfy the plausibility standard of Rule 12(b)(6); and (2) exhaust his administrative

---

[1] Dkt. No. 3.  PBGC notes at the outset a discrepancy between Plaintiff's Motion for
Leave to Proceed in Forma Pauperis (with accompanying Affidavit) (Dkt. No. 2) and
Plaintiff's Exhibit 7 to the amended complaint.  Plaintiff's Affidavit states that he has not
received any income from a retirement source within the past 12 months. (Affidavit, at
2.)  This contradicts Plaintiff's Exhibit 7, at 1, which states that Plaintiff is "receiving a
monthly [retirement] benefit of $1,293.97."  *See* 28 U.S.C. § 1915(e)(2) ("the court shall
dismiss the case at any time if the court determines that – (A) the allegation of poverty is
untrue").  *See, e.g., Eldridge v. District of Columbia*, No. 99-7023, 1999 U.S. App.
LEXIS 34726, at *2 (D.C. Cir. Dec. 22, 1999) (holding that "district court did not abuse
its discretion in dismissing the case based upon untrue allegations of poverty").

remedies with respect to his claim for disability benefits (and is time-barred from doing so now). PBGC therefore requests that Plaintiff's claim for pension plan benefits be dismissed with prejudice or, in the alternative, without prejudice and his claim for disability plan benefits be dismissed with prejudice. Further, it is well settled that Plaintiff is not entitled to a jury in this ERISA action.

## BACKGROUND

### I.    PBGC AND TITLE IV OF ERISA

PBGC administers and enforces the statutory defined benefit pension plan termination insurance program established by Title IV of Employee Retirement Income Security Act of 1974 ("ERISA").[2]  When a pension plan covered by Title IV terminates without enough assets to pay the benefits to which participants are entitled, PBGC usually becomes trustee of the plan and guarantees the payment of pension benefits up to certain statutory limits.[3]  More than 1.3 million participants in more than 3,700 terminated pension plans rely on PBGC for current and future pension benefits.[4]  PBGC guarantees benefits in defined benefit pension plans only. The agency does not guarantee benefits of welfare plans, such as disability plans.[5]

---

[2] 29 U.S.C. § 1301-1461 (2000 & Supp V. 2005).

[3] *See* 29 U.S.C. § 1322.

[4] *See* PBGC 2007 Annual Report at 6, http://www.pbgc.gov/docs/2007AMR.pdf.

[5] ERISA defines "welfare plan" to mean any plan, fund, or program which is established and maintained to provide medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or any benefit described in § 302(c) of the Labor Management Relations Act, 1947 ("*other than pensions on retirement or death, and insurance to provide such pensions*"). 29 U.S.C. § 1002(1).

A pension plan can be terminated either voluntarily by the plan sponsor under certain circumstances, or initiated by the agency.[6]  When PBGC becomes trustee of a terminated plan, it immediately begins paying retirees' guaranteed pension benefits in estimated amounts.  Once the agency obtains and analyzes all the plan and participant records, PBGC finalizes the amount that each participant is (or will be) due, and sends him or her a benefit determination letter that sets forth the participant's benefit.[7]

A participant who wants to challenge PBGC's benefit determination must first file an appeal with the PBGC Appeals Board within the time period prescribed by PBGC's regulation, usually within forty-five days from the receipt of his or her benefit determination.[8]  In addressing this appeal, the PBGC Appeals Board must consider those portions of the file relating to the initial determination, all materials submitted by the appellant and any third parties, and any additional information submitted by PBGC staff.[9]  The decision of the Appeals Board constitutes PBGC's final agency action, after which a participant may seek judicial review under 29 U.S.C. § 1303(f).[10]  PBGC's regulation

---

[6] 29 U.S.C. §§ 1341, 1342.

[7] PBGC's regulations governing issuance of its initial benefit determinations and the administrative appeals process is published at 29 C.F.R. part 4003.  *See* 29 C.F.R. §§ 4003.1(a), (b)(6) and (7); 29 C.F.R. § 4003.21.

[8] *See* 29 C.F.R. § 4003.52 (". . . an appeal under this subpart must be filed within 45 days after the date of the initial determination being appealed . . ."); *see also,* 29 C.F.R. § 4003.7.  The Appeals Board is made up of PBGC officials appointed by PBGC's Executive Director.  29 C.F.R. § 4003.2.

[9] 29 C.F.R. § 4003.59(a).

[10] 29 C.F.R. § 4003.59(b).

makes clear that an aggrieved party who fails to avail himself or herself of the appeal process has failed to exhaust his or her administrative remedies.  29 C.F.R. § 4003.7.

## II.    PLAINTIFF'S PRIOR LITIGATION

"You may have to fight a battle more than once to win it."[11]  These are words that Plaintiff has no doubt taken to heart.  Plaintiff has been battling US Airways since 1986.[12]  Indeed, most of Plaintiff's amended complaint is dedicated to rehashing the same facts and events underlying his numerous legal battles with US Airways.[13]  These facts and proceedings are irrelevant for purposes of the instant action.  PBGC notes as background, however, that the Third Circuit Court of Appeals recently managed to summarize the extensive history of Plaintiff's previous litigation efforts against US Airways and other parties.[14]

Plaintiff cast his litigation net wider in 2005, when he sued not only US Airways, but also PBGC, PBGC's then executive director, and 21 other defendants ("2005 Litigation").[15]  Plaintiff claimed then, as he does now, that PBGC incorrectly determined his benefits under the Retirement Income Plan for Pilots of US Airways ("Pension Plan"

---

[11] Quote attributed to Margaret Thatcher, Prime Minister of the United Kingdom from 1979 to 1990.

[12] Am. Compl. ¶ 33.

[13] *See, e.g., id.* ¶¶ 15-62.

[14] *Garland v. US Airways Inc.*, No. 07-1115, 2008 U.S. App. LEXIS 4563, at *3-5 (3d Cir. Mar. 3, 2008).

[15] *See Garland v. US Airways, Inc., et al.*, No. 05-140, Dkt. Nos. 1, 2 (W.D. Pa. 2005).

or "Plan").[16]  The district court dismissed Plaintiff's suit because of his failure, among

others, to exhaust PBGC administrative remedies.[17]  Plaintiff appealed to the Third

Circuit and lost.[18]  The instant action was brought prior to the Third Circuit announcing

its decision.[19]

## III.    NATURE OF THE INSTANT CASE

Although it is difficult to discern the nature of this case from Plaintiff's amended

complaint, this suit involves a challenge to PBGC's determination of the amount of

Plaintiff's federally-guaranteed pension benefits under the Pension Plan once sponsored

by his former employer, and now trusteed by PBGC.  The basic facts alleged in the

amended complaint are as follows:

- Plaintiff is a former pilot employee for US Airways[20]

---

[16] Plaintiff also alleged that all defendants, including the PBGC defendants, violated various employment statutes, the Railway Labor Act, deprived him of various constitutional rights, committed various civil torts (*e.g.*, libel, slander, tortious interference with a contract, *etc.*) and breached contracts of employment.  *Id.*

[17] In addition to his failure to exhaust, the district court also dismissed Plaintiff's complaint based on improper service of process, lack of jurisdiction (including failure to exhaust administrative remedies), improper venue, and failure to state a claim upon which relief could be granted.  *See Garland v. US Airways Inc.*, No. 05-140, 2006 U.S. Dist. LEXIS 92803 at *18-20 (W.D. Pa. Dec. 21, 2006).  PBGC assumes Plaintiff has elected to file the instant action in this Court based on the district court's ruling of improper venue in the previous proceeding.

[18] *Garland*, 2008 U.S. App. LEXIS 4563.

[19] This Court may take judicial notice of the district court and Third Circuit decisions resolving Garland's prior lawsuits.  *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (recognizing authority of courts to judicially notice related proceedings in other courts); *see also Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) ("[i]n determining whether a complaint states a claim, the court may consider . . . matters of which it may take judicial notice").

[20] Am. Compl. ¶ 20.

- Plaintiff participated in the "US Airways Pilots Retirement Income Plan" sponsored by US Airways[21]

- The Pension Plan was terminated during US Airways' bankruptcy[22]

- PBGC, as the federal government agency that guarantees pension benefits of terminated defined benefit pension plans, became responsible for paying benefits under the Pension Plan in accordance with ERISA[23]

- PBGC made a benefit determination with respect to Plaintiff's Pension Plan benefits[24]

- Plaintiff filed an administrative appeal with PBGC, challenging the amount of PBGC's benefit determination with respect to the Pension Plan[25]

- PBGC denied Plaintiff's administrative appeal[26]

- Plaintiff now brings this instant action appealing PBGC's benefit determination and, for the first time, seeks additional benefits under or in addition to the Pension Plan based on his participation in the "US Airways Pilots Disability Income Plan" or "Disability Plan"[27]

---

[21] The Plaintiff alleges participation in the "US Airways Pilots Retirement Income Plan," but as described above the correct name is the Retirement Income Plan for Pilots of US Airways, and referred to herein as the "Pension Plan" or "Plan." Am. Compl. ¶ 10.

[22] Am. Compl. ¶¶ 11, 61.

[23] Am. Compl. ¶ 13.

[24] Am. Compl. ¶ 70.

[25] Am. Compl. ¶ 71.

[26] Am. Compl. ¶ 72. *See also*, Am. Compl., Ex. 7.

[27] Am. Compl. ¶¶ 64-71.

**ARGUMENT**

I.   **PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER RULE 12(b)(6)**

This Court may dismiss the amended complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  The Supreme Court, in *Bell Atlantic Corp. v. Twombly*, clarified the pleading requirements that a plaintiff must satisfy to survive a Rule 12(b)(6) motion to dismiss.[28]

The Supreme Court noted that Fed. R. Civ. P. 8(a)(2) requires that a plaintiff's complaint provide "'a short and plain statement of the claim, showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[29]  A complaint need not contain detailed factual allegations, but in order to provide the grounds of plaintiff's entitlement to relief, the complaint must plead more than just "labels and conclusions" and a "formulaic recitation of the elements of a cause of action."[30]  The factual allegations must be enough "to raise a right to relief above the speculative level" and to cross the line from possibility to

---

[28] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *see also Dye v. United States*, 516 F. Supp. 2d 61, 68 (D.D.C. 2007); *Aktieselskabet AF 21 v. Fame Jeans, Inc.*, 511 F. Supp 2d 1, 5 (D.D.C. 2007) (J. Lambert).

[29] *Twombly*, 127 S.Ct. at 1964-65; *see also Dye*, 516 F.Supp. 2d at 68; *Aktieselskabet*, 511 F.Supp 2d at 5.

[30] *Twombly*, 127 S. Ct. at 1965; *see also Dye*, 516 F. Supp. 2d at 68; *Aktieselskabet*, 511 F.Supp 2d at 5.

"plausibility of 'entitlement to relief.'"[31]  The Supreme Court referred to this newly

clarified standard as the "plausibility standard."[32]

Effectively, the Supreme Court abandoned its previous Rule 12(b)(6) "no set of

facts" standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) – *e.g.,* "that a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to

relief."  The Supreme Court held that the *Conley* rule would, contrary to Rule 8(a), permit

a "wholly conclusory statement of claim [to] survive a motion to dismiss whenever the

pleadings left open the possibility that a plaintiff might later establish some 'set of

[undisclosed] facts' to support recovery."[33]

While the court must construe the complaint liberally in the plaintiff's favor, it

need not accept inferences drawn by the plaintiff if unsupported by facts alleged in the

complaint and neither must the court accept plaintiff's legal conclusions.[34]  Similarly, this

Court need not accept as true the amended complaint's factual allegations insofar as they

contradict exhibits to the amended complaint or matters subject to judicial notice.[35]  The

same holds true for *pro se* complaints.  Although courts hold *pro se* complaints to a less

stringent standard than attorney-drafted complaints, they need not accept *pro se*

---

[31] *Twombly*, 127 S. Ct. at 1965-66; *see also Dye*, 516 F. Supp. 2d at 68; *Aktieselskabet*, 511 F.Supp 2d at 5.

[32] *Twombly*, 127 S. Ct. at 1968; *see also Dye*, 516 F. Supp. 2d at 68.

[33] *Twombly*, 127 S. Ct. at 1968-69.

[34] *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Dye*, 516 F.Supp. 2d at 68.

[35] *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

plaintiffs' inferences if such inferences are unsupported by the facts set out in the complaint.[36] *Pro se* complaints, like attorney-drafted complaints, must state a claim upon which relief can be granted.[37]

### A. PLAINTIFF FAILED TO ALLEGE ANY FACTS TO SUPPORT HIS CONCLUSORY STATEMENT THAT PBGC WRONGFULLY DENIED HIM HIS PENSION PLAN BENEFITS

As stated above, the Supreme Court in *Twombly* held that a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than a mere "formulaic recitation of the elements of a cause of action."[38] In keeping with *Twombly*, this Court in *Aktieselskabet AF 21* dismissed a complaint that alleged each element of a fraudulent misrepresentation claim but lacked factual allegations necessary to clarify the grounds on which that claim rested.[39] Similarly, in *Dye*, this Court found that plaintiffs' naked assertions that the United States' "'unlawful, unauthorized and unreasonable tax collection . . . practices'" resulted in "'invasion, seizure and taking of private property and substantive inalienable rights'" were far too conclusory and formulaic to support any inference of illegality.[40] "In the absence of any allegations suggesting that the United

---

[36] *See Dye*, 516 F.Supp. 2d at 68.

[37] *See id.; see also Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 235 (D.D.C.) (Lamberth, R.) (internal citations omitted), *aff'd*, 2007 U.S. App. LEXIS 30275 (D.C. Cir. Aug. 27, 2007).

[38] *See Twombly*, 127 S. Ct. at 1964-65.

[39] *See also Aktieselskabet AF 21*, 511 F. Supp. 2d at 1, 18-19.

[40] *Dye*, 516 F. Supp. 2d at 61, 69-70.

States truly did engage in unlawful behavior, plaintiffs' assertions are simply not plausible."[41]

Here, Plaintiff's amended complaint states the following, and only the following, as the basis for challenging PBGC's determination of his Pension Plan benefit:

> PBGC['s] decision denying [Plaintiff] the . . . benefits . . . under the [Pension Plan] was arbitrary, illegal, capricious, unreasonable, discriminatory, and not made in good faith and violates Title 26 U.S.C.A. § 401 and all subparagraphs, Title 26 U.S.C.A. § 411 and all subparagraphs, Title 26 U.S.C.A. § 401(a) and all subparagraphs, and Title 26 U.S.C.A. § 501(a) and all subparagraphs. The decision is not supported by substantial evidence and rises from an erroneous application of federal law.[42]

Plaintiff fails to even recite a formula or the elements to a cause of action. He instead cites to entire Code sections without any elaboration. These allegations are truly "legal conclusions cast in the form of factual allegations" and must therefore be ignored.[43]

Indeed, after reading all 20-plus pages of Plaintiff's amended complaint, PBGC still wonders, as must this Court:

(1)    What about PBGC's decision was "arbitrary, illegal, capricious, unreasonable, discriminatory, and not made in good faith;"

(2)    How did PBGC violate the Internal Revenue Code – 26 U.S.C. §§ 401, 411, 502;

(3)    Why was the PBGC's decision not supported by substantial evidence; and

(4)    Which federal law did PBGC erroneously apply?

---

[41] *Id*. at 70.

[42] Am. Compl. ¶ 73.

[43] *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1275 (D.C. Cir. 1994)); *Richards*, 480 F. Supp 2d at 239 ("vague and conclusory statements are exactly the type of unsupported allegations that this Court does not have to accept and are properly dismissed pursuant to Rule 12(b)(6)").

Answers to these questions cannot be gleaned from even a generous reading of the amended complaint.[44]  Without such factual answers, plaintiff's right to relief is speculative and PBGC's understanding of the nature of the claims against it is non-existent.

Failing to provide any factual allegations, Plaintiff's mere recitation of Code sections and legal conclusions are insufficient "to raise a right to relief above the speculative level" and are simply not plausible.[45]  Because Plaintiff's instant claim for Pension Plan benefits fails to identify the grounds upon which it rests and, thus, fails to state a cause of action upon which relief can be granted, it must be dismissed pursuant to Rule 12(b)(6) with prejudice or, in the alternative, without prejudice.[46]

---

[44] Even a *pro se* plaintiff must "give the defendant fair notice of the plaintiff's claims and the grounds upon which it rests."  *See Richards v. Duke University*, 480 F. Supp. 2d 222, 235 (D.D.C. 2007) (Lamberth, R.) (internal citations omitted).

[45] *Twombly*, 127 S. Ct. at 1964-65.

[46] *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (dismissal with prejudice is appropriate where plaintiff would need an entirely fresh set of facts on which to base a claim because the facts alleged affirmatively preclude relief, or because, even though plaintiff makes clear that he has facts to add to his complaint, he would not have a claim upon which relief could be granted even with those facts). *Cf. Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (complaint that omits essential facts and thus fails to state a claim warrants dismissal without prejudice pursuant to Rule 12(b)(6)).

**B.     PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES WITH REGARD TO HIS CLAIM FOR DISABILITY PLAN BENEFITS**

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts."[47]  The Supreme Court has explained that administrative exhaustion protects administrative agency authority.[48]  The exhaustion doctrine recognizes that "'agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer,'" and that "'frequent and deliberate flouting of administrative processes' could weaken an agency's effectiveness by encouraging disregard of its procedures.'"[49]  Specifically, as to PBGC, "[e]xhaustion would protect PBGC's authority to administer the complex program that Congress has entrusted to it care . . . and obviate what would otherwise be an incentive to disregard- and to disrupt-the PBGC's administrative procedures."[50]

Indeed, Plaintiff *does* know that PBGC regulations prescribe the time and manner in which to file an appeal of a benefit determination.  He did, after all, eventually utilize this process for his Pension Plan benefits claim.[51]  While PBGC's motion to dismiss was pending in the 2005 Litigation, Plaintiff sought to exhaust his administrative remedies

---

[47] *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992); *Garland,* 2006 U.S. Dist. LEXIS at *19-20, n4; *Boivin v. US Airways, Inc.*, 446 F.3d 148, 154-55 (D.C. Cir. 2006)).  *See also, Communications Workers of Am. v. AT&T*, 40 F.3d 426, 432-33 (D.C. Cir. 1994).

[48] *Boivin*, 446 F.3d at 155 (quoting *McCarthy*, 503 U.S. at 145).

[49] *Id.* (quoting *McCarthy*, 503 U.S. at 145).

[50] *Id.*

[51] Am. Compl. ¶ 71.

with respect to his Pension Plan benefits by filing a request for review with PBGC.[52]  As Plaintiff himself acknowledges, this request was limited to benefits under the Pension Plan.[53]

Inexplicably, however, Plaintiff now claims for the first time that he is entitled to additional benefits under or in addition to the Pension Plan based on his participation in the Disability Plan.[54]  No where in Plaintiff's ten-page administrative appeal filed with PBGC (attached as Exhibit A)[55] did he claim entitlement to or *even mention* Disability Plan benefits.  It should not be surprising, then, that the PBGC Appeals Board decision did not address whether Plaintiff was entitled to Disability Plan benefits.[56]  Plaintiff must now know, then, that his claim for Disability Plan benefits, like his initial Pension Plan benefits claim, is subject to the same exhaustion requirements.

Plaintiff had forty-five (45) days from the date of his benefit determination in which to raise with PBGC his Disability Plan benefits claim or any other claim that

---

[52] Am. Compl. ¶ 71.

[53] Am. Compl. ¶ 71 ("[Plaintiff] filed a timely request for . . . pension benefits in accordance with the US Airways Pilots' Retirement Income Plan").

[54] Am. Compl. ¶¶ 64-71.

[55] This Court may consider Plaintiff's benefit determination appeal document because this document, like others, is integral to and referred in Plaintiff's complaint.  *See Kaempe*, 367 F.3d at 965 (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (holding that documents not attached to complaint may nonetheless be considered by court in a motion to dismiss setting if "plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim")).

[56] PBGC's Appeals Board decision is attached to Plaintiff's amended complaint as Exhibit 7.  Although the merits of this claim are not currently before this Court, PBGC would like to express its view that PBGC is not responsible for paying Disability Plan benefits to Plaintiff.

would enhance the amount shown in his benefit determination.[57]  Instead, Plaintiff seeks

to skip PBGC review altogether and bring his disability claim in district court now, more

than one year after he brought his benefit determination appeal to PBGC and more than

two years since instituting the 2005 Litigation.[58]  The only proper outcome is for this

Court to find that Plaintiff failed to exhaust his administrative remedies with respect to

his Disability Plan benefits claim.  Further, because the time for seeking PBGC review

has long since expired, this Court should dismiss this claim with prejudice.[59]

---

[57] 29 C.F.R. § 4003.52 (". . . an appeal under this subpart must be filed within 45 days after the date of the initial determination being appealed . . .").

[58] Am. Compl. ¶ 71.  Although Plaintiff claims he brought his benefit determination appeal on or about September 27, 2006, the actual date was November 26, 2006.  *See* Exhibit A.  September 27, 2006 was the date of PBGC's benefit determination.  *See* Exhibit B ("This is PBGC's formal determination of your benefit … [y]our appeal [if any] must be in writing and filed within 45 days of the date of this letter").  PBGC's benefit determination letter was accompanied by a pamphlet entitled, "Your Right to Appeal," attached hereto as Exhibit C.

[59] *See Plain v. AT&T, Corp.*, 424 F. Supp. 2d 11, 16 (D.D.C. 2006) (granting summary judgment where record established that plaintiff's request for review was untimely filed).  *See also, Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir. 1998) (upholding committee's decision to deny appeal because disability claimant's administrative appeal was untimely presented); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003) (upholding dismissal with prejudice where claimant failed to exhaust administrative remedies and time for doing so had expired); *D'Amico v. CBS Corp.*, 297 F.3d 287, 290, 293 (3d Cir. 2002) (upholding district court's decision to dismiss plaintiffs' complaint with prejudice for failure to exhaust); *Phillips v. Babbitt*, No. 97-1981, 1998 U.S. App. LEXIS 11793 (4th Cir. June 5, 1998) (upholding dismissal with prejudice where claimant failed to exhaust administrative remedies and time for doing so had expired); *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007) (holding that "when exhaustion is no longer possible, dismissal may be with prejudice"); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 454 n.1 (6th Cir. 1991) (upholding dismissal with prejudice where plaintiff failed to exhaust and the time for seeking review with plan administrator, pursuant to the plan's terms, had expired); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("[d]ismissal for failure to exhaust is without prejudice . . . unless it is too late to exhaust"); *Jiminez v. Rice*, 276 F.3d 478 (9th Cir. 2001) (upholding dismissal with prejudice where claimant failed to exhaust remedies); *Counts v. Am. Gen. Life and Accident Ins. Co.*, 111 F.3d 105, 109 (11th Cir. 1997) (affirming dismissal with prejudice

## II.    BECAUSE PLAINTIFF'S ERISA CLAIMS ARE NOT ENTITLED TO JURY TRIAL, HIS JURY DEMAND MUST BE STRICKEN

Many courts have ruled that ERISA claims that are equitable in nature do not carry a right to a jury trial.[60]  In the instant case, Plaintiff's claims arise under ERISA and sound in equity.  And ERISA, 29 U.S.C. § 1303(f), allows only equitable relief in actions against PBGC, including actions against PBGC as a statutory trustee of a terminated pension plan, like this one.[61]  Thus, Plaintiff plainly does not have a right to a jury trial and his demand for one must be stricken from his amended complaint.

## CONCLUSION

Plaintiff's claims should be dismissed because he failed to: (1) exhaust his administrative remedies (and the time for doing so has now expired); and/or (2) state a claim upon which relief can be granted.  Further, because this case involves equitable

---

where disability plan participant failed to appeal initial denial within 60 days of receiving termination letter as required by the plan).

[60] *See Coleman v. PBGC*, 196 F.R.D. 193, 197 (D.D.C. 2000) (striking jury demand where even plaintiffs conceded that no such right existed as to their ERISA claims); *Fitts v. Fannie Mae*, 44 F. Supp. 2d 317, 330-31 (D.D.C. 1999) ("ERISA does not permit jury trials"), *remanded on other grounds*, 236 F.3d 1 (D.C. Cir. 2001); *see also DeFelice v. American Int'l Life Assurance Co.*, 112 F.3d 61, 64-65 (2d Cir. 1997) ("cases involving ERISA benefits are inherently equitable in nature, not contractual, and that no right to jury trial attaches to such claims"); *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1258 (2d Cir. 1996); *Borst v. Chevron Corp.*, 36 F.3d 1308, 1323-24 (5th Cir. 1994); *Bair v. General Motors Corp.*, 895 F.2d 1094, 1096-97 (6th Cir. 1990); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-650 (3d Cir. 1990); *Nevill v. Shell Oil Co.*, 835 F.2d 209, 213 (9th Cir. 1987); *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1567 (11th Cir. 1987); *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985); *In re Vorpahl*, 695 F.2d 318, 319 (8th Cir. 1982); *Wardle v. Central States, S.E. & S.W. Areas Pension Fund*, 627 F.2d 820, 828-30 (7th Cir. 1980).

[61] *See* 29 U.S.C. § 1303(f)(1), (4) (this subsection is the exclusive means for brining actions against PBGC under Title IV of ERISA, which includes actions against PBGC in its capacity as statutory trustee of the pension plan).

claims under ERISA, Plaintiff is not entitled to a jury and thus the jury demand in his

amended complaint must be stricken.

Dated:  April 14, 2008                  Respectfully submitted,
        Washington, D.C.

                                        */s/ Michael A. Maricco*
                                        ISRAEL GOLDOWITZ
                                        Chief Counsel
                                        CHARLES L. FINKE
                                        Deputy Chief Counsel
                                        ANDREA M. WONG (D.C. Bar No. 449128)
                                        Assistant Chief Counsel
                                        MICHAEL A. MARICCO (D.C. Bar No. 492055)

                                        PENSION BENEFIT GUARANTY
                                        CORPORATION
                                        Office of the Chief Counsel
                                        1200 K Street, N.W.
                                        Washington, D.C.  20005
                                        Tel. No. (202) 326-4020, ext. 3732
                                        Fax No. (202) 326-4112
                                        E-mail: maricco.michael@pbgc.gov and
                                        efile@pbgc.gov

                                        Attorneys for Pension Benefit
                                        Guaranty Corporation

# EXHIBIT A

FROM : PRO-SERVICES.COM                    FAX NO. : 7024592239                    Nov. 26 2006 09:58PM P1

1   **Philip A. Garland**
    P.O. Box 33934
2   Las Vegas, Nevada 89133
    (702) 658-5918
3   Appellant
    In Pro Se
4

5                    BEFORE THE APPEALS BOARD OF THE
6               PENSION BENEFIT GUARANTY CORPORATION

7

8   PHILIP ANTHONY GARLAND          )
9              Appellant,           )
                                    )
10                                  )    CASE NO.: 19933400
                                    )
11  vs.                            )
                                    )
12  PENSION BENEFIT GUARANTY        )
    CORPORATION                     )
13             Respondent.          )
14  ─────────────────────────────

15

16          PLAINTIFF PHILIP A. GARLAND'S OPENING BRIEF

17      COMES NOW Appellant Philip A. Garland (hereinafter PLAINTIFF GARLAND), In Pro

18  Se, who hereby brings his OPENING BRIEF before the PENSION BENEFIT GUARANTY

19  CORPORATION (hereinafter PBGC) Case No. 19933400 to challenge a Benefit Determination

20  dated September 27, 2006.

21

22      DATED this 26th day of NOVEMBER, 2006.

23

24

25  By:
    PHILIP A. GARLAND
26  P.O. Box 33934
    Las Vegas, Nevada 89133
27  Appellant
    In Pro Se
28

# TABLE OF CONTENTS

1.  PLAINTIFF'S OPENING BRIEF ........................................ P.1

2.  JURISDICTION ............................................................. P.4

3.  STATEMENT OF ISSUES ............................................... P.4

4.  STANDARD OF REVIEW ............................................... P.4

5.  STATEMENT OF FACTS ................................................ P.5

6.  ARGUMENT ................................................................. P.5

7.  CONCLUSION .............................................................. P.11

8.  Appendix .................................................................... P.12

# TABLE OF CASES

1.  Cooter & Gell v. Hartmarx Corp. 496 U.S. 384 (1990) ............................. P.5

2.  U.S. Airways Group, Inc., 296 B.R. 734, 738 (Bankr.E.D.Va.2003) ............. P.5

3.  Jordan v. Federal Express Corp., 116 F.3d 1005, 1011 (3d Cir. 1997) .......... P.6

4.  Reich v. Continental Casualty Co., 33 F.3d 754, 756, (CA7 1994) ............... P.6

5.  Payonk v. HMW Indus., Inc., 883 F.2d 221 (3d Cir. 1989) ........................ P.7

6.  West v. Butler, 621 F.2d 240, 245 (6th Cir. 1980) ................................. P.8

7.  Gavilik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir.), cert. Denied, 484 U.S. 979,
    108 S.Ct. 495, 98 L.Ed 2d 492 (1987) .............................................. P.8

8.  Community for Creative Non-Violence v. Reid, 490 US 730, 104 L.Ed. 3d 811, 109 S.Ct.
    2166 (1989) .............................................................................. P.9

9.  Connecticut Nat. Bank v. Germain, 503 US 249, 253-254, 117 L Ed 2d 391, 112 S.Ct.
    1146 (1992) .............................................................................. P.9

10. McKennon v. Nashville Banner Publishing Co., 513 US 352, 357, 584, 55 L.Ed. 2d 40,
    98 S. Ct. 866 (1978) ................................................................... P.9

11. Griggs v. Duke Power Co. (1971) 401 US 424, 28 L Ed 2d 158, 91 S. Ct 849 .......... P.9

12.   Philip A. Garland v. US AIR, INC., 767 F.Supp. 715 (W.D.Pa.1991)..................P.4

13.   Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir.1993..................................P.4

14.   Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct 1790, 29 L.Ed.2d 338 (1971)...P.4

15.   Braverman v. United States, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23
      (1942).........................................................................................P.5

16.   United States v. Thomas, 8 F.3d 1552, 1560 n. 21 (11th Cir. 1993)...............P.5

17.   Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir.1990).............P.5

18.   McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L.Ed.2d 291 (1992)...P.5

19.   Communications Workers of Am. v. AT&T, 40 F.3d 426, 432 (D.C.Cir.1994)....P.5

### TABLE OF STATUTES AND DICTIONARY

1.    29 U.S.C. § 1341(c)(2)(B)(ii)(IV)...................................................P.5

2.    28 U.S.C. § 1331(a)(3)................................................................P.5

3.    29 U.S.C. § 1132(a)(3)................................................................P.6

4.    29 U.S.C. § 1301(a)(1)................................................................P.7

5.    29 U.S.C. § 1360(a) (1988)...........................................................P.7

6.    29 U.S.C. § 1108(c)(3)................................................................P.9

7.    29 U.S.C. §§ 521-634 [29 USCS §§ 621-634].......................................P.9

8.    29 U.S.C. § 623(a)(1) [29 USCS § 623(a)(1)]......................................P.9

9.    29 USC § 623 (a)(1) [29 USCS § (a)(1)].............................................P.9

10.   42 USCS §§ 2000e et seq.............................................................P.9

11.   29 USCS §§ 2000e et seq.............................................................P.9

12.   29 USCS § 623(r)(2)...................................................................P.9

13.   42 USCS § 2002e-2(a)(2)..............................................................P.9

## Jurisdiction

1
2     The PBGC Appeals Board has jurisdiction to hear this appeal based upon Title 29
3     CFR § 4003. Whether restitution is a legal or equitable remedy in a particular case, and hence
4     whether it is authorized by § 502 (a)(3)) of the Employee Retirement Income Security Act of 1974
5     (ERISA) (29 U.S.C. § 1132)(a)(3)), which authorizes a civil action to enjoin any act that violates an
6     ERISA-covered employee welfare benefit plan or to obtain "other appropriate equitable relief" for
7     violation of such a plan – remains dependent on the nature of the relief sought. Under ERISA, a
8     person such as PLAINTIFF GARLAND who "adversely affected by an action of [PBGC] with
9
10    respect to a plan in which such person has an interest ... may bring an action against the corporation
11    for appropriate equitable relief in [United States District Court]." 29 U.S.C. § 1303(f)(1).

12                              ## Statement of Issues

13                                         I.
14    Did the PBGC wrongfully take and receive PLAINTIFF GARLAND'S retirement account
                              from US AIRWAYS DEFENDANTS?
15                                        II.
      Did the PBGC upon wrongfully taking and receiving PLAINTIFF GARLAND'S retirement account
16              commit another wrong by reducing his benefit amount on account of his age?
                                         III.
17    Did the PBGC wrongfully submit a benefit determination that should be recalculated without the age
                                    reduction?
18                                       IV.
19    Does PLAINTIFF GARLAND have some other remedy to this action committed by PBGC and US
                              AIRWAYS DEFENDANTS?

20                              ## Standard Of Review

21    Although ERISA does not expressly require exhaustion of administrative remedies, "where
22
23    Congress has not clearly required exhaustion, sound judicial discretion governs." McCarthy v.
24    Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992), see Communications
25    Workers of Am. V. AT&T, 40 F.3d 426, 432 (D.C.Cir.1994). PBGC Appeals Board reviews cases
26    de novo.
27
28

## Statement of Facts

1

2    On April 25, 2001, PLAINTIFF GARLAND had been terminated by US AIRWAYS

3    DEFENDANTS from position as an airline pilot that he held since November 13, 1982. PLAINTIFF

4    GARLAND continues to challenge his termination violates 42 U.S.C. § 1981(a), 42 U.S.C. § 1982,

5    42 U.S.C. § 1985(c), 42 U.S.C. § 1986 and 29 U.S.C. § 1132(a)(3). On January 30, 2003, US

6    AIRWAYS DEFENDANTS filed with the PBGC (Pension Benefit Guaranty Corporation) a notice

7    of its intent to terminate its Pilots Retirement Income Plan, a defined-benefit pension plan, citing "a

8    serious funding shortfall". In re US Airways Group, Inc. 296 B.R. 734, 738 (Bankr.E.D.Va.2003).

9    US AIRWAYS DEFENDANTS simultaneously filed a motion in the bankruptcy court for the

10   judicial findings required by ERISA (Employees Retirement Income Security Act of 1974) to permit

11   a distress termination of the Plan. See 29 U.S.C. § 1341(c)(2)(B)(ii)(IV). The bankruptcy court

12   subsequently granted the motion, finding that "unless the Plan is terminated, the debtors will be

13   unable to pay all of their debts pursuant to a plan of reorganization and will be unable to continue in

14   business outside the chapter 11 reorganization process." In re U.S. Airways Group, Inc. No. 02-

15   83984, Order at 1 (Bankr.E.D.Va.Mar.2,2003) (citing 29 U.S.C. § 1341 (c)(2)(B)(ii)(IV). After US

16   AIRWAYS DEFENDANTS gained the consent of the pilots' union (but not PLAINTIFF

17   GARLAND'S) to terminate the Plan, see 29 U.S.C. § 1331(a)(3), the company entered into an

18

19   agreement with the PBGC setting March 31, 2003 as the Plan's termination date.

20

21                              Argument

22                                  I.

23   Did the PBGC wrongfully take and/or retain PLAINTIFF GARLAND'S retirement account
     from US AIRWAYS DEFENDANTS?

24       PLAINTIFF GARLAND contends that the courts have held that "'extraordinary

25   circumstances' generally involve acts of bad faith on the part of the employer, attempts to actively

26   conceal a significant change in the plan, or commission of fraud." Jordan v. Federal Express Corp.,

27   116 F.3d 1005, 1011 (3d Cir. 1997). Whether restitution is a legal or equitable remedy in a particular

28

FROM : PRO-SERVICES.COM    FAX NO. : 12026459239    Nov. 26 2006 10:01PM P6

1  case, and hence whether it is authorized by § 502 (a)(3)) of the Employee Retirement Income

2  Security Act of 1974 (ERISA) (29 U.S.C § 1132)(a)(3)) – which authorizes a civil action to enjoin

3  any act that violates an ERISA-covered employee welfare benefit plan or to obtain "other

4  appropriate equitable relief" for violation of such a plan – remains dependent on the nature of the

5  relief sought. PLAINTIFF GARLAND seeks restitution and for the wrongful action of the US

6  AIRWAYS DEFENDANTS, ALPA DEFENDANTS (Airline Pilots Assn. Intl) and PBGC

7  DEFENDANTS and generally for restitution which in equity an action must seek not to impose

8  personal liability on the defendant, but to restore to the plaintiff particular funds or property in the

9  defendant's possession. There is a limited exception for an accounting for profits, as, for example, if

10  a plaintiff is entitled to a constructive trust on particular property held by the defendant, then the

11  plaintiff may also recover profits produced by the defendant's use of that property, even if the

12  plaintiff cannot identify a particular res containing the profits sought to be recovered. Thus,

13  "restitution is a legal remedy when ordered in a case at law and an equitable remedy… when ordered

14  in any equity case." And whether it is legal or equitable depends on "the basis for [the plaintiff's]

15  claim" and the nature of the underlying remedies sought. Reich v. Continental Casualty Co., 33 F.3d

16  754, 756 (CA7 1994) (Posner, J.) US AIRWAYS DEFENDANTS held on to PLAINTIFF

17  GARLAND individual account too long and for the wrong reasons, which provided an avenue for

18  his account to be placed in termination with other pilots after having waiting more than two (2)

19  years. Under ERISA a person such as PLAINTIFF GARLAND who "adversely affected by an

20  action of [PBGC] with respect to a plan in which the person has an interest… may bring an action

21  against the corporation for appropriate equitable relief in [United States District Court]." 29 U.S.C. §

22  1303(f)(1). PLAINTIFF GARLAND has a viable claim against US AIRWAYS DEFENDANTS

23  when PBGC DEFENDANTS took and received his individual benefit contribution to the Plan made

24  by DEFENDANT US AIRWAYS, INC after his termination/retirement date of April 25, 2001. The

25  Plan had not terminated until March 2003. PBGC DEFENDANTS should have never took and

1  received PLAINTIFF GARLAND'S individual account form US AIRWAYS DEFENDANTS in

2  this case. Because ERISA permits an employer to function as both a plan administrator and a plan

3  sponsor. 29 U.S.C. § 1108(c)(3). PBGC DEFENDANTS refuse to cooperate and should be subject

4  to a Court Order to turnover the wrongfully held benefit contribution it unjustifiably received from

5  US AIRWAYS DEFENDANTS pertaining to PLAINTIFF GARLAND'S individual account.

6  PLAINTIFF GARLAND contends that 29 U.S.C. § 1360(a)(1988) provides in relevant part:

7          If a principal purpose of any person in entering into any transaction is to evade

8      liability to which such person would be subject under this subtitle and the transaction
       becomes effective within five years before the termination date of the termination on

9      which such liability would be based, then such person's controlled group (determined
       as of the termination date) shall be subject to liability under this subtitle in connection

10     with such termination as if such person were a contributing sponsor of the terminated

11     plan as of the termination date.

12

13     Because ERISA permits an employer to function as both a plan administrator and a plan

14  sponsor. 29 U.S.C. § 1108(c)(3). In Payonk v. HMW Indus., Inc., 883 F.2d 221 (3d Cir. 1989), we

15  outlined as follows the guidelines for determining whether a corporate management decision falls

16  within the fiduciary function of ERISA.

17         Where an administrator of a plan decides matters required in plan administration or

18     involving obligations imposed upon the administrator by the plan, the fiduciary duties
       imposed by ERISA attach. Where, however, employers conduct business and make

19     business decisions not regulated by ERISA, no fiduciary duties apply. And, when
       employers wear "two hats" as employers and administrators" … they assume

20     fiduciary status "only when and to the extent" that they function in their capacity as
       plan administrators, not when they conduct business that is not regulated by ERISA."

21     Payonk 883 F.2d at 225 (citation omitted)

22

23     PLAINTIFF GARLAND contends that U.S.C. § 404 states in relevant part:

24     "(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall
       discharge his duties with respect to a plan solely in the interest of the participants and

25     beneficiaries and—
              (A) for the exclusive purpose of—

26     (i) providing benefits to participants and their beneficiaries; …
              (B) with the care, skill, prudence, and diligence under the circumstances then

27     prevailing that a prudent [person] acting in a like capacity and familiar with such

28

1   matters would use in the conduct of an enterprise of the like character and with like

2   aims. 29 U.S.C. § 1104(a)(1)(emphasis added).

3   PLAINTIFF GARLAND further contends that 29 U.S.C. § 510 provides in pertinent part:

4      It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or

5      discriminate against a participant or beneficiary for exercising any right to which he
       is entitled under the provisions of an employee benefit plan, ... or for the purpose of

6      interfering with the attainment of any right to which such participant may become
       entitled under the plan or this subchapter, or for the purpose.

7   Generally, the prohibitions of section 510 are primarily aimed at preventing

8   unscrupulous employers such as US AIRWAYS DEFENDANTS from discharging or harassing

9   their employees to prevent them from attaining their vested pension rights. West v. Butler, 621 F.2d

10  240, 245 (6th Cir.1980). The anti-discrimination language of section 510 is aimed at protecting

11  individual rights rather than the overall financial integrity or financial security of pension funds.

12  West, 621 F.2d at 246. Section 510 protects against actions by employers which actions are taken for

13  the purpose of interfering with attainment of pension eligibility. Gavilik v. Continental Can Co., 812

14  F.2d 834, 852 (3d Cir.), cert. Denied, 484 U.S. 979, 108 S.Ct 495, 98 L.Ed.2d 492 (1987). Clearly,

15  PBGC DEFENDANTS, US AIRWAYS DEFENDANTS and ALPA DEFENDANTS (Airline Pilots

16  Assn. Intl.) have violated PLAINTIFF GARLAND'S civil rights and should be required to turn over

17  the original funds in his account on April 25, 2001. PLAINTIFF GARLAND alleges a conspiracy

18  has been planned, agreed upon, and acts committed against him by these defendants. He contends

19  that the essential elements of a 42 U.S.C. § 1986(3) claim are: (1) a conspiracy; (2) to deprive

20  plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the

21  conspiracy, and (4) an injury or deprivation resulting therefrom. Vinson v. Kunawson, ... F.2d 683,

22  686 (10th Cir.1993) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct 1790, 29 L.Ed.2d

23  338 (1971)). A conspiracy may be proven in the district where it was formed or in any district

24  where an overt act was committed in furtherance of its objects. Smith, 918, F.2d at 1557; Barnes,

25  681 F.2d at 722. An overt act "may be that of only a single one of the conspirators and need not be

1    itself a crime." Braverman v. United States, 317 US 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942).

2    "Generally, an individual conspirator need not participate in the overt act in furtherance of the

3    conspiracy because once a conspiracy is established, and an individual is linked to that conspiracy,

4    an overt act committed by any conspirator is sufficient." United States v. Thomas, 8 F.3d 1552, 1560

5    n. 21 (11ᵗʰ Cir. 1993). And see Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir.1990)

6    ("A play cannot be understood on the basis of some of its scenes but only on its entire performance,

7    and similarly, a discrimination analysis must concentrate not on individual incidents, but on the

8    overall scenario").

9

10                                            II.

11   **Did the PBGC, upon wrongfully taking and receiving PLAINTIFF GARLAND'S retirement
     account commit another wrong by reducing his benefit amount on account of his age?**

12        The Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 521-634 [29

13   USCS §§ 621-634], makes it unlawful for an employer to "discriminate against any individual with

14   respect to his compensation, terms, conditions, or privileges of employment, because of such

15   individual's age." § 623 (a) (1). "The starting point for the interpretation of a statue is always its

16   language," Community for Creative Non-Violence v. Reid, 490 US 730, 104 L.Ed. 3d 811, 109 S.Ct.

17   2166 (1989), and "courts must presume that a legislature says in a statute what it means and means

18   in a statute what it says there," Connecticut Nat. Bank v. Germain, 503 US 249, 253-254, 117 L Ed

19   2d 391, 112 S.Ct. 1146 (1992). The plain language of the ADEA clearly allows for suits brought by

20   the relatively young when discrimination is in favor of the relatively old. The phrase

21   "discriminate . . . because of such individual's age," 29 U.S.C. § 623(a)(1) [29 USCS § 623(a)(1), is

22   not restricted to discrimination because of relatively older age. The language of the ADEA's

23   prohibitory provisions was modeled on, and is nearly identical to, parallel provisions in Title VII.

24   See McKennon v. Nashville Banner Publishing Co., 412 US 352, 357, 584, 55 L.Ed. 2d 40, 98 S. Ct.

25   866 (1978). The common ground in this case is the generalization that the ADEA's prohibition

26   covers "discrimination . . . because of [an] individual's age," 29 USC § 623 (a)(1) [29 USCS §

27

28

1   unlawful for an employer such as US AIRWAYS DEFENDANTS "to limit, segregate, or classify

2   his employees in any way which would deprive or tend to deprive any individual or employment

3   opportunities or otherwise adversely affect his status as an employee, because of such individual's

4   age ...." (2) Except for substitution of the word "age" for the words "race, color, religion, sex, or

5   national origin," the language of that ADEA provision is identical to the language in § 703(a)(2) of

6   Title VII (42 USCS § 2002e-2(a)(2)), an earlier statute. (3) Other provisions of the ADEA also

7   parallel Title VII.

8                                         IV.

9   **Does PLAINTIFF GARLAND have some other remedy to this action against PBGC and US**

10  **AIRWAYS DEFENDANTS?**

           Whether restitution is a legal or equitable remedy in a particular case, and hence whether it is

11  authorized by § 502 (a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA) (29

12  U.S.C. § 1132(a)(3))—which authorizes a civil action to enjoin any act that violates an ERISA-

13  covered employee welfare benefit plan or to obtain "other appropriate equitable relief" for violation

14  of such a plan — remains dependent on the nature of the relief sought. Under ERISA, a person such

15  as PLAINTIFF GARLAND who "adversely affected by an action of [PBGC] with respect to a plan

16  in which such person has an interest...may bring an action against the corporation for appropriate

17  equitable relief in [United States District Court]. 29 USC § 1303(f)(1).

18

19                                      Conclusion

20         Based upon the foregoing Factual and Legal Argument, PBGC DEFENDANTS have

21  conspired to obtain or have otherwise wrongfully obtained PLAINTIFF GARLAND retirement

22  benefits. After having obtained such retirement benefits PBGC DEFENDANTS wrongfully reduce

23  PLAINTIFF GARLAND'S benefit determination solely because of his age violating his civil and

24  equal rights.

25

**APPENDIX**

1.   Copy of PBGC Benefit Determination Letter dated September 27, 2006......Exhibit No. 1



FROM : PRO-SERVICES.COM                                    FAX NO. :7026459239                    Nov. 26 2006 10:05PM P11



**EXHIBIT # 1**

FROM : PRO-SERVICES.COM          FAX NO. : 7026459239          Nov. 26 2006 10:05PM P12



**Privacy Act Data**

# Benefit Statement

**PHILIP GARLAND**

**09/07/2006 06:12 PM**
**Page 1 of 2**

## RETIREMENT INCOME PLAN FOR PILOTS OF US AIRWAYS

PBGC Case Number:                                                      19933400
Date of Plan Termination:                                        March 31, 2003

Participant's Name:                                              **PHILIP GARLAND**

**Participant's Information**

Social Security Number:                                            **XXX-XX-3711**
Gender:                                                                   **Male**
Date of Birth:                                                      **04/05/1954**
Date of Hire:                                                       **11/13/1982**
Date of Termination of Employment:                                  **07/24/2001**
Participant Number:                                                    **G66721**
Merger Category:                                                       **US Air**
Normal Retirement Date:                                             **05/01/2014**

**Summary of Participant's Benefit**

Actual Retirement Date (ARD):                                       05/01/2004
Current Monthly Benefit:                                             $1,282.67
PBGC Monthly Benefit at Actual Retirement Date:                     $1,292.74
Form of Annuity:                                                   Straight Life

Your current monthly benefit of $1,282.67 will increase to $1,292.74 due to an Incorrect Original
Maximum Insurance Limit. See benefit calculation for details.

**Benefit Calculation**

(1)     **Plan Monthly Benefit at ARD as a Straight Life**
        **Annuity:**                                                 $3,310.69

FROM : PRO-SERVICES.COM          FAX NO. : 7026459239          Nov. 26 2006 10:06PM  P13

Privacy Act Data

09/07/2006 06:12 PM
Page 2 of 2

**PHILIP GARLAND**

---

The benefits PBGC guarantees are limited by federal pension law to the PBGC's maximum monthly amount that was in effect on the date of plan termination. This limit is adjusted to reflect your age and form of annuity.

(2)   **Maximum Insurance Limit at ARD as a Straight Life**
      **Annuity:**                                                        $1,288.90

(3)   **Guaranteed Monthly Benefit at ARD as a Straight Life Annuity:**
      lesser of (1) or (2) =
      lesser of $3,310.69 or $1,288.90 =                                  $1,288.90

(4)   **Additional Monthly Benefit due to 4022(c) at ARD as a Straight Life**
      **Annuity:**                                                           $3.84

(5)   **PBGC Monthly Benefit at ARD as a Straight Life Annuity:**
      (3) + (4) =
      $1,288.90 + $3.84 =                                                 $1,292.74



# EXHIBIT B



PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

402
September 27, 2006

PBGC Case Number:     19933400
Plan Name:            RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.

PHILIP A GARLAND
PO BOX 33934
LAS VEGAS NV 89133

Dear PHILIP A GARLAND:

You are receiving estimated pension benefits from PBGC under the pension plan named above. We have finished our review of the plan and your benefit, and we have determined that you are entitled to a monthly payment of $1,292.74.

Your benefit is paid in the form of a Straight Life Annuity with No Survivor Benefits. The Straight Life Annuity provides you with a monthly benefit for the rest of your life.

The enclosed Benefit Statement explains how we calculated your benefit.

Because the amount you are entitled to is larger than the amount you have been receiving, we will send you a single payment that includes interest to make up for the difference between what was due and what we paid. Your benefit increase and single payment will be made as soon as possible.

This is PBGC's formal determination of your benefit. You have the right to appeal this determination if you provide a specific reason the determination is wrong. Your appeal must be in writing and filed within 45 days of the date of this letter. If you simply have a question about how your benefit was calculated, you should call us for an explanation, instead of filing an appeal. But please note the time you have to file an appeal will not be extended unless you specifically request an extension within the 45-day period. The enclosed pamphlet, *Your Right to Appeal*, explains more about filing an appeal.

If you have any questions, or need assistance, please call our Customer Contact Center at 1 (800) 400-7242. If you use a TTY/TDD, call 1-800-877-8339, and give the relay operator our telephone number.
You may also write to:

        PBGC/Insurance Operations Department
        P.O. Box 151750
        Alexandria VA 22315-1750

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

When contacting us, include your Social Security number, PBGC case number 19933400, and a daytime telephone number.  Please keep this letter in your records for future reference

Sincerely,

*Robert Puyada*

Robert Puyada
Manager
Field Benefit Administration

Enclosures:
(Printed) Benefit Statement
Your Right to Appeal

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**



Privacy Act Data

# Benefit Statement

**PHILIP GARLAND**

09/07/2006 06:12 PM
Page 1 of 2

## RETIREMENT INCOME PLAN FOR PILOTS OF US AIRWAYS

| | |
|---|---|
| PBGC Case Number: | 19933400 |
| Date of Plan Termination: | March 31, 2003 |

Participant's Name:                                      **PHILIP GARLAND**

**Participant's Information**
--------------------------

| | |
|---|---|
| Social Security Number: | XXX-XX-3711 |
| Gender: | Male |
| Date of Birth: | 04/05/1954 |
| Date of Hire: | 11/13/1982 |
| Date of Termination of Employment: | 07/24/2001 |
| Participant Number: | G66721 |
| Merger Category: | US Air |
| Normal Retirement Date: | 05/01/2014 |

**Summary of Participant's Benefit**
------------------------------------

| | |
|---|---|
| Actual Retirement Date (ARD): | 05/01/2004 |
| Current Monthly Benefit: | $1,282.67 |
| PBGC Monthly Benefit at Actual Retirement Date: | $1,292.74 |
| Form of Annuity: | Straight Life |

Your current monthly benefit of $1,282.67 will increase to $1,292.74 due to an Incorrect Original
Maximum Insurance Limit.  See benefit calculation for details.

**Benefit Calculation**
--------------------

| | | |
|---|---|---|
| (1) | Plan Monthly Benefit at ARD as a Straight Life Annuity: | $3,310.69 |

Privacy Act Data

**PHILIP GARLAND**

09/07/2006 06:12 PM
Page 2 of 2

The benefits PBGC guarantees are limited by federal pension law to the PBGC's maximum monthly amount that was in effect on the date of plan termination. This limit is adjusted to reflect your age and form of annuity.

(2)    Maximum Insurance Limit at ARD as a Straight Life
       Annuity:                                                         $1,288.90

(3)    Guaranteed Monthly Benefit at ARD as a Straight Life Annuity:
       lesser of (1) or (2) =
       lesser of $3,310.69 or $1,288.90 =                               $1,288.90

(4)    Additional Monthly Benefit due to 4022(c) at ARD as a Straight Life
       Annuity:                                                         $3.84

(5)    PBGC Monthly Benefit at ARD as a Straight Life Annuity:
       (3) + (4) =
       $1,288.90 + $3.84 =                                              $1,292.74

# EXHIBIT C



YOUR RIGHT TO APPEAL



**PBGC**

Protecting America's Pensions

PENSION BENEFIT GUARANTY CORPORATION

# YOUR RIGHT TO APPEAL

You have the right to appeal PBGC's formal determination of your benefit if you can provide a specific reason why the determination is wrong. However, if you simply have a question about your benefit or how it was calculated, you should call PBGC's Customer Contact Center at **1-800-400-7242** (for TTY/TDD users, call the Federal Relay Service at 711 and ask to be connected to 1-800-400-7242.) But remember, you have **45 calendar days** from the date of the formal determination letter to submit an appeal; if you need more time to prepare your appeal before that 45-calendar-day limit expires, you can request an extension from PBGC's Appeals Board, as described below.

How to File an Appeal. Send your appeal to PBGC's Appeals Board. Your appeal **must:**

- Be in writing;
- Be clearly marked as an appeal;
- Specifically explain why PBGC's determination is wrong and the result you are seeking;
- Describe the relevant information you believe is known by PBGC and include copies of documents that provide additional information that the Appeals Board should consider. It is important to include copies of any documentation that supports your claim; and
- Be postmarked by the U.S. Postal service, FAXed, e-mailed or delivered directly to the Appeals Board **no later than 45 calendar days** after the date of PBGC's formal determination letter.

You May Request Additional Time to File Your Appeal. If you need more time to file your appeal, you may ask the Appeals Board for an extension of the filing deadline. The appeal period will be suspended as of the date you file your request for an extension.

Your request for more time **must** be in writing and must state why you need more time to file your appeal and how much more time you will need. This request must be postmarked by the U.S. Postal Service, FAXed, e-mailed or delivered to the Appeals Board *no later than 45 calendar days after the date of PBGC's formal determination.*

The Appeals Board will grant an extension of time only upon a showing of good cause. If the Board denies the extension, the 45-calendar-day appeal period will resume as of the date of the denial.

Other Information You Should Include. You should include in your appeal or request for an extension of the filing deadline:

- Your Social Security Number;
- The name of your pension plan;
- The PBGC case number assigned to your plan (this can be found at the top of your formal determination letter);
- Your daytime telephone number (including the area code);
- The name and Social Security Number of the plan participant, if you are not the participant;
- A list of any information requests for which you are awaiting PBGC's response; and
- If possible, a copy of the PBGC formal determination letter and benefit statement.

Where to Send Appeals and Requests for Additional Time to File an Appeal. Send your appeal or request for a filing extension to:

**Pension Benefit Guaranty Corporation**
**ATTN: Appeals Board**
**Post Office Box 151750**
**Alexandria, VA 22315-1750**

You may FAX your appeal or request for a filing extension to the Appeals Board at 202/326-4095 or 202/326-4091, or send it by e-mail to **appeals@pbgc.gov**. The Appeals Board will acknowledge your correspondence within one week of receipt.

Where to Get Information or Filing Assistance. If you have questions about how to file an appeal or request a filing extension, or would like information about your appeal, you may call the Appeals Board, toll-free, at **1-800-400-7242**, or write to the Board at the above address.

You Do Not Need an Attorney to Represent You. You may act on your own behalf during the appeals process, or you may have someone else represent you. You do not need an attorney to file an appeal. However, if you do select a representative and that person is not an attorney, you must send the Appeals Board a notarized **power of attorney** signed by you that specifically states the scope of the representative's authority to act for you.

Information to Support Your Appeal; Hearings. The Appeals Board decides appeals based on PBGC records and the information you submit. Therefore, it is important that your written appeal include all the facts and documents you wish the Appeals Board to consider. The Board may

## Checklist

ask you for additional information. If you request a hearing or an opportunity to present witnesses, the Board will decide whether it is needed to resolve your case. The Board's past experience indicates that hearings or witnesses rarely are needed since appeals ordinarily can be decided based on written information.

**You Must Appeal Before You Can Go to Court.** Review by the Appeals Board is the final step in PBGC's administrative review process. If you do not appeal PBGC's formal determination to the Appeals Board, you may not be able to obtain review by a court of law.

**When PBGC's Benefit Determination Will Go into Effect.** If you do not appeal, PBGC's formal benefit determination will take effect when the 45-calendar-day appeal period ends. If you do appeal, the determination will not take effect until the Appeals Board issues its decision. PBGC then will make any changes to your benefit ordered by the Appeals Board.

After your benefit determination has taken effect, PBGC may change your benefit if it discovers an error, but only under certain circumstances. PBGC will always change your benefit if correcting the error will **increase** your benefit. PBGC will **decrease** your monthly benefit only if the error is a monthly amount of $5.00 or more and usually only if the error is discovered within two years after the date of the formal determination.

**Reference.** PBGC's "Rules for Administrative Review of Agency Decisions" can be found in Title 29, Code of Federal Regulations, Part 4003. These rules are available on the Internet at:

**www.pbgc.gov/laws/lawsregs/code/cfr4003.htm**

- Have you addressed your letter and envelope to the Appeals Board?

  **Pension Benefit Guaranty Corporation
  ATTN: Appeals Board
  Post Office Box 151750
  Alexandria, VA 22315-1750**

- Does your letter include your name, address, Social Security Number, daytime telephone number, plan name, and PBGC case number?

- Does your letter clearly state that it is an **appeal or request for an extension of time** to appeal?

- Does your letter specifically explain why PBGC's determination is wrong or why you are requesting an extension of time?

- Have you included all information that applies to your appeal or request for an extension of time, including a copy of your PBGC formal determination letter and benefit statement?

- Have you included a notarized power of attorney if you are being represented by someone other than a lawyer?

- Is your appeal or request for more time postmarked, FAXed, e-mailed, or delivered to the Appeals Board **no later than 45 calendar days** after the date of PBGC's formal determination letter?

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| PHILIP A. GARLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 1:08-cv-00151-RCL |
| | ) |
| PENSION BENEFIT GUARANTY | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

_____)

### [PROPOSED] ORDER

Having considered the Motion to Dismiss Amended Complaint and Strike Jury

Demand ("Motion") filed by defendant Pension Benefit Guaranty Corporation, it is

hereby:

ORDERED that the Motion is GRANTED;

ORDERED that plaintiff's pension plan claim is dismissed
___with (or) ___ without prejudice;

ORDERED that plaintiff's disability claim is dismissed
___ with (or) ___ without prejudice; and it is

FURTHER ORDERED that plaintiff's jury demand is
stricken.

Dated: _____                    _____

Royce C. Lamberth
United States District Judge